# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

MAHLON OIE, individually and on behalf of all others similarly situated,

        Plaintiff,

    v.

KAMAN & CUSIMANO LLC,

        Defendant.

Case No.: 2:24-cv-00775-JPS

## PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### I.    INTRODUCTION

Plaintiff, Mahlon Oie ("Plaintiff"), individually and as the Class Representative of the certified Class, respectfully submits this Motion for Final Approval of the parties' Class Action Settlement (the "Settlement").[1] The motion is unopposed by Defendant Kaman & Cusimano, LLC ("Defendant").

Plaintiff has successfully achieved meaningful relief for the Class Members through the Settlement which provides direct monetary payments to each Class Member from the Settlement Fund without the need to submit a claim. On October 15, 2025, the Court preliminarily approved the Settlement and conditionally certified the Class for settlement purposes pursuant to Fed. R. Civ. P. Rule 21(c)(1). (ECF No. 20, Preliminary Approval Order). Based on the following unopposed motion, the Court's previous findings in the Preliminary Approval Order, and the

---

[1]     Unless otherwise noted, capitalized terms have the meaning ascribed to them in the Settlement Agreement. (*See* Settlement Agreement ("Agreement" or "Agr.") filed with Plaintiff's Motion for Preliminary Approval on June 4, 2025 (ECF No. 19.)).

record in this Action, Plaintiff respectfully submits that the Court should now grant final approval of the Settlement because it is a fair, reasonable, and adequate result for the Class Members.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

This consumer class action arises form Plaintiff's allegations that Defendant unlawfully attempted to collect alleged debts due from Plaintiff and other similarly situated Class Members in violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* (the "FDCPA"). Plaintiff's Class Action Complaint (ECF No. 1) (the "Complaint") alleges, among other things, that Defendant is a debt collector and that Defendant violated sections 1692e, 1692f and 1692g of the FDCPA by sending Plaintiff and similarly situated Class Members false or misleading collection communications representing that they had only ten (10) days to dispute the alleged debt or have request validation of the alleged debt from Defendant, despite the statutory requirements of the FDCPA. Defendant denies the alleged wrongdoing and has alleged defenses to Plaintiff's Complaint in Defendant's Answer. (ECF No. 8).

After extensive investigation and evaluation of the facts and law concerning the claims asserted in the Action and good faith and arm's length settlement negotiations, the parties arrived at a Settlement in compromise of disputed claims in the Action. The Agreement provides meaningful relief to the Settlement Class Members. Agr. § 16. While Plaintiff is confident of a favorable determination on the merits, Plaintiff believes it is desirable to compromise, settle, and forever bar the Action to eliminate the further risk and expense of litigation, including the filing of a motion for class certification, Plaintiff agrees that the Settlement provides substantial settlement benefits to the Settlement Class Members. *Id*. Although Defendant denies liability, Defendant has agreed it is desirable to resolve this Action and bring relief to the Class instead of the delay, further expense, inconvenience, and inherent risk of continued litigation. *Id.* at § 3, 6, 9.

2

The parties informed the Court they had reached a settlement in principle in February 2025. ECF No. 17. After exchanging multiple drafts of the Settlement Agreement and exhibits attached thereto, the Parties fully executed the Settlement Agreement on June 3, 2025. Subsequently, on June 4, 2025, Plaintiff filed an unopposed Motion for Preliminary Approval of the Settlement. ECF No. 19. Thereafter, on October 15, 2025, the Court preliminarily approved the Settlement and conditionally certified the Class for settlement purposes pursuant to Fed. R. Civ. P. Rule 21(c)(1). The Court's Preliminary Approval Order certified the Class for settlement purposes, appointed Plaintiff's counsel, David McGlothlin, Mona Amini, and Gustavo Ponce of Kazerouni Law Group, APC and Matthew McKenna of Shield Law, LLC, as Class Counsel, and appointed the named Plaintiff, Mahlon Oie, as the Class Representative in the Action. ECF No. 20 at 12. In addition, the Court approved the proposed Notice to the Class, as it constitutes the best notice practicable under the circumstances and constitutes valid, due, and sufficient notice to Class Members in full compliance with the requirements of applicable law, including the due process clause of the United States Constitution; and appointed Class-Settlement.com as the Settlement Administrator for the purposes of disseminating Notice and administering the Settlement. *Id*.

Following the Court's Preliminary Approval Order (ECF No. 19), on October 30, 2025, counsel for Defendant caused notices to be sent in accordance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 (the "CAFA Notice") to the Attorney General of the United States and the Attorney General of Wisconsin via Certified Mail. *See* Declaration of John K. Rossman ("Rossman Decl.") ¶¶ 2-3, Exhibits A-B. Also, out of an abundance of caution, after receiving a returned damaged, empty envelope that had contained the CAFA Notice sent to the Attorney General for the United States, counsel for Defendant resent the CAFA Notice to Attorney General for the United Sates again on December 9, 2025, via Certified Mail. *Id*. ¶ 4, Exhibits C-D.

### III. SUMMARY OF SETTLEMENT

#### A. The Class Definition

The Court certified for settlement purposes the Class defined as follows:

> All natural persons within the United States who were subjected to the Collection Activities of an alleged debt to whom Defendant sent an initial communication between June 21, 2023 and June 21, 2024 that was substantially similar or identical to the Collection Letter as defined in the Class Settlement Agreement ¶ 13(a).

*See* ECF No. 20, Preliminary Approval Order, at 11.

#### B. Summary of the Settlement Terms

The Settlement establishes a Settlement Fund from which the Class Members who do not request exclusion from the Settlement shall receive a pro rata portion distribution. Agr. § 16. 19. 21, 22. Should the Court grant final approval of the Settlement, within thirty (30) days of the Effective Date, Defendant will have the Settlement Fund deposited with the Settlement Administrator; and within forty-five (45) days of the Effective Date, the Settlement Administrator will disseminate the Class Members' pro rata portions from the Settlement Fund. Agr. § 21. The settlement checks to Class Members shall be valid for one-hundred twenty (120) days from the date on the check, and thereafter any uncashed amounts or amount otherwise remaining in the Settlement Fund shall be distributed to the agreed upon *cy pres* recipient, Marquette Law School Volunteer Clinic. Agr. § 19. No amount of money remaining in the Settlement Fund shall revert to Defendant. *Id*. Separate from the Settlement Fund established for monetary payments to the Class Members, Defendant agreed to compensate Plaintiff as the Class Representative in this Litigation with an Incentive Award in the amount of $1,000 (*Id*. § 17) and Defendant agreed to pay the costs of notice and settlement administration to the Settlement Administrator. *Id*. §§ 15, 26.

The Settlement also provided that Class Counsel would apply to the Court for an award of attorney's fees and costs to be paid by Defendant separate and apart from the Settlement Fund. Agr. § 8. The parties discussed attorney's fees and costs after an agreement was reached regarding the relief for the Class, and did not agree regarding an amount of reasonable attorney's fees and costs for Plaintiff and Class Counsel for this Litigation. *Id.* § 18. Accordingly, Plaintiff has moved for an award of an award of attorney's fees and costs along with the requested Incentive Award for Plaintiff for serving as the Class Representative in this Litigation for the benefit of the Class. (ECF Nos. 21, 23-25). Defendant has submitted its opposition to Plaintiff's Motion for Award of Attorney's Fees, Costs, and Incentive Award (ECF Nos. 22, 27) (the "Fee Motion").[2] Should the Court grant final approval including an award of attorney's fees and costs, the approved award of fees and costs shall be paid by Defendant separate from the Settlement Fund. Thus, an award of Class Counsel's requested attorneys' fees and costs will not reduce the benefits made available to the Class, and does not reduce the pro rata amount each Class Member receives from the Settlement Fund.

### C. Class Notice Was Effectuated Per the Court's Preliminary Approval Order and the Settlement Was Well-Received by the Class Members

Pursuant to the Court's Preliminary Approval Order (ECF No. 20), and the Settlement terms, the Court-appointed Settlement Administrator, Class-Settlement.com, caused direct Mail Notice sent by U.S. First Class Mail to each of the Class Members on November 6, 2025.[3] *See*

---

[2] Defendant's Opposition to Plaintiff's Fee Motion is as to attorney's fees only and indicates that Defendant does not oppose Plaintiff's request for an Incentive Award in the amount of $1,000 for Plaintiff Mahlon Oie for serving as the Class Representative in this case, or the request for an award of costs, which were $999.04 at the time of Plaintiff's Motion. *See* ECF No. 22 at 15.

[3] The parties previously estimated 93 Class Members, however after further review of the Class definition and the Class List following the Court's Preliminary Approval Order, the Class is ultimately comprised of 82 individual Class Members. Accordingly, the Settlement Administrator disseminated direct Mail Notice to the 82 Class Members. *See* Merryman Decl. ¶¶ 8- 9.

5

Declaration of Dorothy Sue Merryman on behalf of Class-Settlement.com ("Merryman Decl.") ¶ 9. As of January 15, 2026, four (4) of the Mail Notices were returned by the U.S. Postal Service as undeliverable. *Id*. ¶ 10. The Settlement Administrator was able to obtain new addresses for three (3) of the returned Mail Notices and they were remailed. *Id*. In total, the Settlement Administrator estimates that direct Mail Notice was successfully sent to approximately 99% of the Class. *Id*. As of the December 29, 2025 Opt-Out Deadline, the Settlement Administrator received only one (1) Opt-Out Request from a Class Member timely requesting exclusion from the Settlement. *Id*. ¶ 11, Exhibit 2. Therefore, the Class received the best notice practicable under the circumstances, which was in the form preliminarily approved by the Court, the direct Mail Notice to the Class satisfied due process, and the Class Members' reaction to the Settlement was overwhelmingly positive.

## IV. FINAL APPROVAL OF THE SETTLEMENT IS WARRANTED

The Court should grant final approval to the Settlement. Final approval of a class action settlement involves two fundamental inquiries. First, the Court must determine whether a class can be certified under Rule 23(a) and at least one prong of Rule 23(b). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Second, the Court must determine whether the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

In determining whether to grant approval, the Seventh Circuit has long recognized that federal courts strongly favor resolution of litigation through settlement and there is an overriding public interest in settling class action litigation, and it should therefore be encouraged. *Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotation marks omitted), overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor

the settlement of class action litigation"). The traditional means for handling claims like those at issue here as individual litigations would unduly overload the court system, require a considerable expenditure of public and private resources and, given the relatively small value of the claims for most of the individual Class Members, would be impracticable. Thus, the proposed Settlement is the best vehicle for Class Members to receive relief to which they are entitled in a prompt and efficient manner.

The Court has already preliminarily determined that the Settlement satisfies Rule 23's requirements. ECF No. 20. Plaintiff analyzed and applied the relevant Rule 23(a) and (b) factors to the class in Plaintiff's Motion for Preliminary Approval. ECF No. 19. There is no reason such findings should be disturbed. Since preliminary approval, Plaintiff has continued to serve as an adequate Class Representative and Class Counsel have also continued to adequately represent the interests of the Class Members by, among other things, timely filing Plaintiff's Motion for Award of Attorney's Fees, Costs, and Incentive Award, and otherwise overseeing the noticed process and administration of the Settlement.

### A. The Class Meets the Requirements of Fed. R. Civ. P. 23(a)

#### 1. The Class is so numerous that joinder of all Class Members is Impracticable

First, the Court must consider whether the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While there is no express cut-off in terms of number, the Seventh Circuit has indicated that a class of 40 members satisfies this requirement where the class members' potential recoveries were too small to warrant the pursuit of individual actions. *See Swanson v. Am. Consumer Industries, Inc*., 415 F.2d 1326, 1333 n.9 (7th Cir. 1969*); Orr v. Shicker*, 953 F.3d 490, 498 (7th Cir. 2020) ("[A] forty-member class is often regarded as sufficient to meet the numerosity requirement." (quoting *Mulvania v. Sheriff of Rock Island Cnty*., 850 F.3d

849, 859 (7th Cir. 2017))). *"To be impracticable, joinder need not be impossible, but instead must be shown to be inconvenient and difficult." Id; see also* 32B Am. Jur. 2d Federal Courts, When Joinder is Impracticable § 1608 (2014).

Here, the Parties have confirmed that the Class is comprised of 82 Class Members. Agr. § 13.d.[4] Given that the litigation of 82 separate and nearly identical claims would be economically and judicially impracticable and the minimal recovery for individual Class Members, the Class is sufficiently numerous that joinder of all the Class Members' claims is impracticable, and this matter is appropriate for class adjudication.

## 2. The Claims Arise from Common Questions of Law and Fact

Next, the Court must also consider whether "there are questions of fact and law common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy this requirement, Plaintiff's claims "must depend upon a common contention . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Orr v. Shicker*, 953 F.3d 490, 498 (7th Cir. 2020) (quoting *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011).

Here, the common questions of law and fact include whether the initial collection communications sent by Defendant violate the FDCPA by misleading or falsely representing to Plaintiff and the class members that they had less than 30 days to dispute the alleged debt or have it validated by Defendant, whether such conduct by Defendant violates sections 1692e, 1692f and 1692g of the FDCPA under the "least sophisticated" debtor standard; and whether Plaintiff and

---

[4]    *See n. 3, supra.* The parties previously estimated 93 Class Members, however after further review of the Class definition and the Class List following the Court's Preliminary Approval Order, it was determined that the Class is comprised of 82 individual Class Members. *See* Merryman Decl. ¶¶ 8- 9.

the Class Members are entitled to recover statutory damages provided by the FDCPA. Because Plaintiff and the Class Members each received debt collection communications from Defendant with the same, or substantially similar, language, common issues of law and fact exist in this Litigation, and the claims at issue are subject to common proof. *See Lucas v. GC Servs. L.P.*, 226 F.R.D. 337, 340 (N.D. Ind. 2005) ("Courts consistently have found a common nucleus of operative facts if a defendant has allegedly directed standardized conduct toward the putative class members or if the class claims arise out of standardized documents."); *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (commonality requirement is typically met where the defendant has "engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters or documents" (citing *Chandler v. Southwest Jeep-Eagle, Inc*., 162 F.R.D. 302, 308 (N.D. Ill. 1995); *Kleiner v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683, 691 (N.D. Ga. 1983); *Heartland Comms., Inc. v. Sprint Corp*., 161 F.R.D. 111 (D. Kan. 1995))); *Mann v. Acclaim Fin. Servs*., 232 F.R.D. 278, 284 (S.D. Ohio 2003) ("In FDCPA cases, where plaintiffs have received similar debt collection letters . . . courts have found common questions of law or fact sufficient to certify the class.") (internal citations omitted). Accordingly, commonality is satisfied.

### 3. Plaintiff's Claims are Typical of the Claims of the Class

Third, the Court must consider whether Plaintiff's claims or defenses are typical of the claims or defenses of the Class. Fed. R. Civ. P. 23(a)(3). The question of typicality is closely related to the question of commonality. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). A claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [is] based on the same legal theory." *Id;* (quoting *De La Fuente v. Stokley-Van Camp, Inc*., 713 F.2d 225, 232 (7th Cir. 1983). Some factual variations may not defeat typicality, rather, the requirement is meant to ensure that the named representative's

claims have the same essential characteristics as the claims of the class at large. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006). "Typicality requires 'enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group.'" *Orr*, 953 F.3d at 500 (quoting *Spano v. Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011)).

Here, Plaintiff's claims are typical of the claims of the Class Members, as they arise from a nearly identical factual basis because Defendant's standardized conduct gave rise to the FDCPA claims. Plaintiff, like members of the Class, received the same form debt collection communication from Defendant in an attempt to recover sums due between June 21, 2023, and June 21, 2024, which allegedly violated sections 1692e, 1692f and 1692g of the FDCPA by misleading or falsely representing that they had only ten (10) days to dispute the alleged debt or have it validated by Defendant. Complaint, ¶¶ 26-33. The only differences between these collection communications from Defendant were the dates, names, contact information and account number contained therein, but the substance of the collection communications sent to Plaintiff and the Class shared the same essential characteristics. Plaintiff is therefore advancing the same claims and legal theories on behalf of himself and the Class Members. Plaintiff's claims are thereby representative of, and reasonably co-extensive with, the claims of the Class. *See Lucas v. GC Servs. L.P.,* 226 F.R.D. 337, 341 (N.D. Ind. 2005) ("All of the class members' claims arise from the same practice . . . which gave rise to [p]laintiffs' claims, that is each time [d]efendants sent a collection letter similar to that received by [p]laintiffs, they allegedly violated the Fair Debt Collection Practices Act. Thus, [p]laintiffs' claims are typical of the class because they arise from the same course of conduct and are based on the same general legal theory."); *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 698 (S.D. Fla. 2004) ("Parties seeking class certification have satisfied the typicality requirement by showing

that all prospective class members received a variation of the same collection letter.") (quoting *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 700 (M.D. Fla. 2000))). Therefore, Plaintiff's claims are typical of the Class.

### 4. Plaintiff and Class Counsel Have Fairly and Adequately Protected the Interests of the Class

The Court next considers if Plaintiff and Plaintiff's counsel "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement looks at both "'the adequacy of the named plaintiff's counsel, and the adequacy of the representation provided in protecting the different, separate, and distinct interest' of the class members." *Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993) (quoting *Secretary of Labor v. Fitzsimmons*, 805 F.3d 682, 697 (7th Cir. 1986) (*en banc*)).

Here, Plaintiff is a member of the Class, and does not have any known conflicts of interest with other Class Members or Class Counsel. ECF No. 19-1 at 2, 5, 6-13; ECF No. 19-2 at 2. Furthermore, Plaintiff has retained competent Class Counsel experienced in litigating consumer class actions, including those involving violations of FDCPA, and Class Counsel has vigorously litigated this Action since its inception, engaged in extensive good-faith arm's length settlement negotiations, and has adequately represented the interests of the Class. ECF No. 19-1 at 6-11. Therefore, Plaintiff and Class Counsel have, and will continue to, adequately represent the Class in this Litigation and their appointment should be confirmed by the Court along with granting final approval of the Settlement.

### B. The Class Meets the Requirements of Fed. R. Civ. P. 23(b)(3)

### 1. Common Questions Predominate Over Individual Issues

Class certification under Rule 23(b)(3) is appropriate where "questions of law or fact common to class members predominate over any questions affecting only individual members."

11

Fed. R. Civ. P. 23(b)(3). The "predominance" and "superiority" requirements of Rule 23(b)(3) serve to limit class certification to cases where "a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997). "Predominance" tests the "legal or factual questions that qualify each class member's case as a genuine controversy" and is similar to Rule 23(a)(3)'s requirement of typicality. *Id.* at 623.

Here, the predominant question common to all Class Members is whether the initial communications sent by Defendant violate the FDCPA by misleading or falsely representing to Plaintiff and the class members that they had less than 30 days to dispute the alleged debt or have it validated by Defendant, and this issue predominates over any individual issues that could arise among the Class Members. *See Jackson v. Nat'l Action Fin. Servs., Inc.,* 227 F.R.D. 284, 290 (N.D. Ill. 2005) (holding that "[a]s long as the letters that class members received are very similar . . . the legal issue of whether those letters violate the FDCPA is predominate"); *Quiroga v. Olds Prods. Co. of Ill.,* No. 22-CV-390-SCD, 2024 WL 4512098, at *4 (E.D. Wis. Oct. 17, 2024) ("Rule 23(b)(3)'s predominance requirement is satisfied when common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication." (quoting *Messner v. Northshore Univ. HealthSystem,* 669 F.3d 802, 815 (7th Cir. 2012)*; Day v. Check Brokerage Corp.,* 240 F.R.D. 414, 419 (N.D. Ill. 2007) (holding that class issues predominated when the "common issue [was] whether the debt collection letters that [the d]efendant sent to [the plaintiff] and the class members violate[d] the FDCPA" and the parties pointed to no individual questions that outweighed that issue). Therefore, the Court should finally certify the Class for settlement purposes because common questions predominate.

## 2. A Class Action is the Superior Method for Resolution of This Matter

Rule 23(b)(3) also requires the Court to determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The primary focus is efficiency in determining whether the class action is the superior method for resolving the controversy presented. *Eovaldi v. First Nat'l Bank*, 57 F.R.D. 545 (N.D. Ill. 1972). The Court is required to determine the best available method for resolving the controversy in keeping with judicial integrity, convenience, and economy. *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 189 (N.D. Ill. 1992). It is proper for a court, in deciding the "best" available method, to consider the ". . . inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974).

Here, resolution of the dispute under the class action mechanism is superior to all other available means for the fair and efficient adjudication of this controversy involving persons who received an initial communication from Defendant which mislead or falsely represented their rights under sections 1692e, 1692f and 1692g of the FDCPA. In the absence of class certification, the Court could potentially be inundated with "many individual cases that seek to litigate an essential core of the same legal and factual issues." *Lucas,* 226 F.R.D. at 342. These separate actions would be "repetitive, wasteful and an extraordinary burden on the courts[,]" so a class action is necessary here. *Tatz v. Nanophase Technologies Corp.,* No. 01-C-8440, 2003 U.S. Dist. LEXIS 9982, 2003 WL 21372471, at *9 (N.D. Ill. June 13, 2013)*; see also Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 620, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems.") The goal is to "achieve economies of time, effort, and expense, and promote

. . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Id.* at 615 (citing Fed. R. Civ. P. 23 Advisory Committee Notes)

In addition, preceding notice of this Action, Class Members were likely unaware of their rights under the FDCPA, or that the FDCPA requires that a debt collector include certain language in their initial collection communication. *Sledge v. Sands*, 182 F.R.D. 255, 259 (N.D. Ill. 1998) ("Many plaintiffs may not know their rights are being violated, may not have a monetary incentive to individually litigate their rights, and may be unable to hire competent counsel to protect their rights. A class action is judicially efficient in lieu of clogging the courts with thousands of individual suits."). Moreover, Class Members may have little interest in individually controlling the prosecution of their claim because each individual Class Member's claim and damages suffered by individual Class Members may be relatively small compared to the burden and expense that would be entailed by individual litigation. This is evidenced by the lack of objections to the Settlement, and only one (1) request for exclusion from the Settlement. Individualized litigation would also cause significant delay, expense, and an overwhelming waste of already limited judicial resources by the actions brought by hundreds of individual consumers. *See, e.g.*, Magallon, 2018 U.S. Dist. LEXIS 42943, at *18; *Lucas,* 226 F.R.D. at 342 (finding a "a class action is superior to individual action in this case because litigation costs are high and the likely recovery is limited"). By contrast, the class action device presents fewer management difficulties for the Class and provides the benefits of single adjudication and comprehensive supervision by a single court, efficiently and successfully resolving the claims against Defendant and providing meaningful relief to the Class. Accordingly, the class action vehicle is the superior method for resolution of this Litigation.

### C. Final Approval is Warranted Because the Settlement is Fair, Reasonable, and Adequate

Rule 23(e) requires a determination by the district court that the proposed settlement is "fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2). When determining whether a settlement is ultimately fair, adequate, and reasonable at the final approval stage, courts in this Circuit consider the following factors: (1) the strength of Plaintiff's case compared to the terms of the proposed settlement; (2) the likely complexity, length, and expense of continued litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *See Isby*, 75 F.3d at 1199. In reviewing these factors, courts view the facts "in a light most favorable to the settlement." *Id.* (quoting *Armstrong,* 616 F.3d at 315). In addition, courts "should not substitute their own judgment as to the optimal settlement terms for the judgment of the litigants and their counsel." *Armstrong*, 616 F.2d at 315. The application of these factors her confirms the Settlement is fair, reasonable, and adequate, and should be finally approved.

### 1. The Strength of Plaintiff's Case Compared to the Settlement Terms Favors Final Approval

"The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of the [p]laintiffs' case on the merits balanced against the amount offered in the settlement." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864 (7th Cir. 2014) (quotation marks omitted). Nevertheless, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to Plaintiffs." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (citations omitted).

Here, Plaintiff and proposed Class Counsel believe they have a strong case for violations of the FDCPA that would likely prevail at trial. Defendant naturally disputes Plaintiff's allegations and conversely believes it has a good chance of prevailing at trial. While each side believes in their respective position, the Parties agree that the Settlement will avoid the great expense, inconvenience, delay, and inherent risk involved in prolonged litigation. Agr. at § 6-9. Without the Settlement at this juncture, Defendant would continue to vigorously contest liability and damages. *Id*. at § 3. Defendant would also continue to challenge the propriety of class certification outside of the settlement context. As such, the outcome of the Litigation would by no means be certain absent the Parties' Settlement.

## 2. The Likely Complexity, Length, and Expense of Litigation

Absent the Settlement, although Plaintiff is confident in the merits of Plaintiff's claims, the likelihood of success for the Class Members if this Action continued was uncertain, as Defendant would undoubtedly continue to vigorously defend the Action. *See* Agr. § 3. As a putative class action, complex legal and factual issues would be the subject of hotly contested pretrial motions, including summary judgment. The class certification decision (if granted) might also lead to appellate motion practice, inevitably significantly delaying prosecution of the Action, and along with risk and uncertainty, the ultimate relief to the Class through a later settlement or after trial and appeals could by several years later. The Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) ("There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation."). Thus, the Agreement avoids risks for both sides and is in the best interest of the Class.

### 3. The Class Members' Reaction to the Settlement Has Been Overwhelmingly Positive, Supporting Final Approval

As discussed above, according to the Settlement Administrator, approximately 99% of the Class received direct Mail Notice, only one (1) Class Member submitted an Opt-Out Request for exclusion from the Settlement. Further, there were zero (0) objections from the Class to the Settlement. The lack of any negative responses strongly favors approval of the Settlement. *See, e.g., In re Southwest Airlines Voucher Litig.*, 2013 U.S. Dist. LEXIS 120735, at *21 (N.D. Ill. Dec. 6, 2013) (finding that the "low level of opposition" "supports the reasonableness of the settlement"); *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1314 n.15. (3d Cir.1993) (silence is a "tacit consent" to settlement). The lack of any objections and only one Opt-Out Request is strong evidence of the Class Members' overwhelmingly positive reaction to the Settlement, demonstrates of the quality and value of the Settlement, and supports final approval.

### 4. Class Counsel Strongly Endorse the Settlement

The opinion of competent counsel is relevant to the question whether a settlement is fair, reasonable, and adequate under Rule 23. *Synfuel*, 463 F.3d at 653. District courts are "entitled to rely heavily on the opinion of competent counsel." *Gautreaux*, 690 F.2d at 634. Given Class Counsel's extensive experience in litigating similar cases, they are well positioned to assess the risks of continued litigation and relief secured by the Settlement. *See, In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000) (placing "significant weight on the unanimously strong endorsement of these settlements" by "well-respected attorneys"). Based on Class Counsel's investigation, evaluation of the pleadings, and exchanges with Defendant, and arm's length settlement discussions, Class Counsel strongly recommend approval of the Settlement and believe this Settlement is in the best interest of the Class.

### 5. The Stage of Proceedings and Discovery in the Action

This factor is less concerned with the quantum of time or volume of discovery than it is with there being a sufficient basis upon which to evaluate the merits of the case and to contrast those merits against the proposed settlement. Class Counsel believes the parties exchanged sufficient information to weight the strengths and weaknesses of the Parties' respective claims and defenses, in order to allow them to make well-informed decisions about the Settlement. Thus, the stage of this case and the informal discovery undertaken was appropriate to allow for a determination that this Settlement is fair, reasonable, and adequate.

### D. Plaintiff is Entitled to An Award of Reasonable Attorney's Fees and Costs

Under the FDCPA, the prevailing plaintiff is entitled to "a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). "[T]he award of attorney's fees to plaintiffs for a debt collector's violation of 'any provision' of the FDCPA is mandatory." *Zagorski v. Midwest Billing Servs., Inc.*, 128 F.3d 1164, 1166 (7th Cir. 1997). "[T]he methodology traditionally employed in determining appropriate fees under 42 U.S.C. § 1988 will serve as a useful guide" in FDCPA cases. *Id.* The Supreme Court has held that "the lodestar method yields a fee that is presumptively sufficient" under § 1988. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010); *Gastineau v. Wright,* 592 F.3d 747 (7th Cir. 2010). The Supreme Court has also encouraged a consensual resolution of attorney's fees as the ideal toward which litigants should strive. In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the United States Supreme Court wrote, "[a] request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Id.* at 437. The Seventh Circuit recognizes, "to encourage able counsel to undertake FDCPA cases, as Congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases. Paying

counsel in FDCPA cases at rates lower than those they can obtain in the marketplace is inconsistent with the congressional desire to enforce the FDCPA through private actions, and therefore misapplies the law." *Tolentino v. Friedman*, 46 F.3d 645, 652-653 (7th Cir. 1995).

Here, as discussed in greater detail in Plaintiff's moving papers and reply brief in support of Plaintiff's Motion for Award of Attorney's Fees, Costs, and Incentive Award (ECF Nos. 22, 24), the lodestar method establishes the reasonableness of Class Counsel's lodestar and Class Counsel's hourly rates. Class Counsel's supplemental declaration submitted concurrently herewith provides aggregate Class Counsel's lodestar to date and total unreimbursed litigation costs. Class Counsel anticipates additional attorney's fees and costs will continue to be incurred for the preparation and appearance for the Final Approval Hearing and following the final approval order.

### E. Plaintiff's Requested Incentive Award is Reasonable

Plaintiff incentive awards serve to encourage members of a class to become class representatives and to reward individual efforts taken on behalf of a class. *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (awarding incentive award of $25,000). "In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.*

Here, Plaintiff's participation and willingness to undertake the responsibilities and risks attendant with bringing this class action warrant that he be awarded the modest proposed Incentive Award of $1,000.00. In this matter, Plaintiff fulfilled his role as a class representative and helped obtain a meaningful recovery for the class, and Plaintiff's requested incentive award does not reduce the pro rata recovery of the other Class Members from the Settlement Fund. The incentive award sought here is reasonable under the circumstances because "there would be no benefit to

Class members if the Class representative had not stepped forward and prosecuted this matter to the current resolution." *Blandina v. Midland Funding, LLC*, 2016 U.S. Dist. LEXIS 71477, at *23 (E.D. Penn. May 31, 2016). Notably, there has been no opposition or objection received from the Class to the Settlement overall, or as to the proposed Incentive Award to the Class Representative. Furthermore, courts have approved incentive awards in similar FDCPA actions. *See, e.g., Oravecz v. Action Financial Services, LLC*, No. 14-cv-1124-WED (E.D. Wis. June 30, 2015) (final approval order granting an incentive award of $3,000 in a FDCPA class action settlement); *Schoemaker v. Bass & Moglowsky, S.C.,* No. 3:19-cv-00316-WMC (W.D. Wis., Jan. 3, 2020) (approving an incentive award of $1,000 in a FDCPA class action settlement); *Pierre v. Midland Credit Mgmt.,* No. 16 C 2895, 2019 U.S. Dist. LEXIS 2357296 (N.D. Ill. Dec. 11, 2019) (granting an incentive award of $4,000 in an FDCPA class action settlement); *Durham v. Cont'l Cent. Credit, Inc.,* 2011 U.S. Dist. LEXIS 58684, *5 (S.D. Cal. June 2, 2011) ($3,000 incentive award plus $1,000 statutory damages); *Henderson v. Eaton*, 2002 U.S. Dist. LEXIS 20840, *18 (E.D. La. Oct. 25, 2002) ("when the incentive compensation falls in the modest range of $2,000 to $3,000, it is generally held unnecessary to consider the amount of time and money spent in the litigation and other circumstances relating to costs."); *Hollins v. Church Church Hittle + Antrim*, 2024 WL 2017861 (N.D. Ind. May 3, 2024) (awarding class representative an incentive award of $1,000.00 out of a $4,000.00 total class fund with no discussion of the amount of effort expended by the class representative). Therefore, Plaintiff respectfully requests that the Court approve the requested Incentive Award along with granting final approval of the Settlement.

## V.    CONCLUSION

Based on the above, and the record in this Action, Plaintiff respectfully requests that the Court grant final approval of the Settlement, including an award of Class Counsel's requested

attorney's fees and costs and the requested Incentive Award for Plaintiff for his service as the Class

Representative in this Action.

Dated: January 30, 2026                    Respectfully submitted,


By: */s/ Mona Amini*
   David McGlothlin, Esq.
   Mona Amini, Esq.
   Gustavo Ponce, Esq.
   KAZEROUNI LAW GROUP, APC
   245 Fischer Ave., Unit D1
   Costa Mesa, CA 92626
   Telephone: (800) 400-6808
   Facsimile: (800) 520-5523

   Matthew McKenna, Esq. (Bar No. 1136438)
   SHIELD LAW, LLC
   237 South St. Unit 110
   Waukesha, WI 53186
   Telephone: (262) 420-5953
   Facsimile: (508) 588-7303

   *Attorneys for Plaintiff and the Class*

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 4(b), I hereby certify that I am an employee of Kazerouni Law Group, APC, and that on the foregoing **PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** to be served through the Court's CM/ECF system to those persons designated by the parties that have appeared in the matter.

Dated: January 30, 2026          By: _____ */s/ Mona Amini* _____
                                          Mona Amini